UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. 2:11-CR-42 |
| | ) | |
| | ) | |
| MICHAEL C. HICKS, | ) | |
| Petitioner. | ) | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court on the motion of defendant for a reduction of sentence, [Doc. 80]. Defendant requests a reduction in sentence pursuant to Amendments 782 and 788 to the United States Sentencing Guidelines. The United States has responded and acknowledges the defendant is eligible for a reduction in sentence but defers to the Court's discretion whether and to what extent to reduce defendant's sentence, [Doc. 81]. The motion will be GRANTED in part.

**I. Factual and Procedural Background**

The defendant was convicted of participating in a conspiracy to manufacture at least fifty grams of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A), and conspiring to distribute and possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C), [Doc. 74]. He was held accountable for 110.64 grams of pseudoephedrine, which yielded a marijuana equivalent of 1106.4 kilograms, resulting in a base offense level of 32. The base offense level was increased by two levels for the unlawful disposal of hazardous waste pursuant to USSG § 2D1.1(b)(13)(A)(ii) and decreased by three levels pursuant to USSG § 3E1.1(a) & (b) (acceptance of responsibility), resulting in an adjusted total offense level of 31. The guidelines range was 135 to 168 months. The defendant objected to

1

the section 2D1.1(b)(13(A)(ii) enhancement, and the Court sustained the objection. The United States filed a motion for downward departure pursuant to 18 U.S.C. § 3553(e) and USSG § 5K1.1. The government recommended a three-level reduction. [Doc. 65]. The Court granted the motion and imposed an 84-month sentence of imprisonment, a thirty percent reduction.

At the time of the entry of his guilty plea, the defendant stipulated to the following facts:

> a) Through the testimony of several witnesses, including co-conspirators, the United States would demonstrate, beyond a reasonable doubt, that between January of 2009 and May of 2011, in the Eastern District of Tennessee, the defendant did knowingly, intentionally, and without authority, conspire with at least one other person to manufacture more than 50 grams of methamphetamine, a Schedule II controlled substance, and to distribute and to possess with the intent to distribute a quantity of methamphetamine, a Schedule II controlled substance.
>
> b) During the course of the conspiracy, the defendant purchased pseudoephedrine pills in Tennessee which he then used to manufacture methamphetamine.
>
> c) The defendant purchased numerous boxes of cold medication containing pseudoephedrine in Tennessee. According to the Tennessee pseudoephedrine log registry, the defendant purchased 110.64 grams of pseudoephedrine between January 30, 2009 and February 26, 2011.
>
> d) On August 6, 2010, the defendant attempted to shop-lift several items used in the manufacture of methamphetamine from the Wal-Mart in Elizabethton, Tennessee. The defendant fled the store before he could be apprehended, but in the shopping cart, agents found items commonly used to manufacture methamphetamine, including Coleman fuel, salt, and Gatorade bottles.
>
> e) On August 31, 2010, the defendant was observed at Wal-Mart in Elizabethton and was arrested. During a search of his car, agents found two small baggies of methamphetamine, a small amount of marijuana, and a pack of rolling papers.
>
> f) On August 31, 2010, agents searched the defendant's residence at 152 Rufus Taylor Road, Elizabethton, Tennessee. During the search, agents found a package of pseudoephedrine pills and a set of digital scales.

2

Case 2:11-cr-00042-JRG   Document 84   Filed 06/26/15   Page 2 of 7   PageID #: 356

g) On August 31, 2010, the defendant gave a statement to law enforcement, admitting his involvement in the manufacture of methamphetamine.

h) On November 23, 2010, agents searched co-defendant Tara Potter's residence. During the search, agents found several items associated with the manufacture of methamphetamine, including: pseudoephedrine pills, coffee filters in a Mountain Dew bottle that was in the freezer, and methamphetamine residue. Also in the residence, agents found a notebook containing the telephone number for the defendant and co-defendant Kevin Cline, as well as co-conspirators, Shane Hardy and Steve Hardin.

i) The defendant admits that he was obtaining pseudoephedrine pills from co-conspirators and that he was distributing finished methamphetamine to them as well.

j) On December 23, 2010, the defendant was stopped in his vehicle by law enforcement officers. Behind the seat, officers found two gallon containers of Coleman fuel.

k) On March 23, 2011, officers searched the defendant's garage at 152 Rufus Taylor Road, Elizabethton, Tennessee. During the search, officers found numerous items used to manufacture methamphetamine, including: drain cleaner, Coleman fuel, plastic bottles used to manufacture methamphetamine, coffee filters, funnels, ammonia nitrate, salt, lithium batteries, pseudoephedrine pills, and empty pseudoephedrine packaging.

1) The defendant admits that he had manufactured methamphetamine at the garage on his property, 152 Rufus Taylor Road, Elizabethton, Tennessee.

m) In total, the defendant admits to purchasing 110.64 grams of pseudoephedrine for coconspirators and for his own use in the manufacture of methamphetamine. In addition, the defendant admits that he obtained additional quantities of pseudoephedrine from others, which the defendant then used to manufacture methamphetamine.

n) The defendant admits that, in total, a conservative amount of 55.32 grams of actual methamphetamine was produced from the pseudoephedrine purchased.

3

    o) The defendant further agrees that 11 0. 64 grams of pseudoephedrine converts to 11 06.4 kilograms of marijuana.

    p) The defendant further agrees that he distributed a quantity of the methamphetamine he manufactured to various individuals in exchange for boxes of pseudoephedrine.

    q) The defendant further agrees, pursuant to 21 U.S.C. §853(q), to pay restitution for the cleanup costs associated with the lab found at 152 Rufus Taylor Road, Elizabethton, Tennessee, on March 23, 2011.

[Doc. 32].

## II. Standard of Review

  "Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 131 S. Ct. 2685, 2690 (2011) (internal citation and quotation marks omitted). Title 18 United States Code § 3582(c)(2), however, gives a district court authority to modify a term of imprisonment that has been imposed on a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission," 18 U.S.C. § 3582(c), through a retroactively applicable amendment such as Amendment 782. *Id.*; USSG § 1B1.10. The Court may reduce the term, "after considering the factors set forth in § 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Section 1B1.10 identifies the guideline amendments that may be applied retroactively, and sets out the factors for deciding a sentence reduction motion under § 3582(c). The Supreme Court has made clear that § 3582 does not require a sentencing or resentencing proceeding, but gives courts the power to reduce an otherwise final sentence under circumstances established by the Sentencing Commission. *Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010); USSG § 1B1.10, Cmt. background (noting that

4

a reduction under § 1B1.10 is discretionary and "does not entitle a defendant to a reduced term of imprisonment as a matter of right").

Section 3582(c)(2) establishes a two-step inquiry: First, the court must determine whether the defendant is eligible for a sentence reduction. If she is, the court must then consider whether, in its discretion, the authorized reduction is warranted in whole or in part under the circumstances. *Dillon*, 130 S. Ct. at 2691-92; *United States v. Greenwood*, 521 Fed. App'x 544, 547 (6th Cir. 2013). In exercising its discretion, the court is required to consider public safety factors and is permitted to consider post-sentencing conduct in deciding whether a reduction in the defendant's term of imprisonment is warranted. USSG § 1B1.10, Cmt. (n. 1(B)(ii)-(iii)). Thus, the district court is required to consider both the § 3553(a) factors and "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in defendant's term of imprisonment." *Curry*, 606 F.3d at 330 (quoting USSG § 1B1.10, Cmt. n. 1(B)(ii)).

One other factor is relevant to the instant motion. Ordinarily, a defendant's sentence may not be reduced to a term "less than the minimum of the amended guideline range." USSG § 1B1.10(b)(2)(A). But where, as here, defendant previously received a below-guideline sentence "pursuant to a government motion to reflect the defendant's substantial assistance to authorities," the Court has authority to grant a reduction "comparably less than the amended guideline range." USSG § 1B1.10(b)(2)(B). In addition, where, as is the case here, the defendant obtained a downward departure pursuant to 18 U.S.C. § 3553(e), "the amended guideline range shall be determined without regard to the operation of § 5G1.1 . . . and § 5G1.2." USSG § 1B1.10(c).

The relevant factors here demonstrate that a reduction is appropriate but that the reduction should be less than that requested by defendant. First is the seriousness of defendant's criminal conduct. The defendant was a substantial participant in a very serious conspiracy to distribute a

5

large quantity of methamphetamine. He was a key player in that he actually manufactured methamphetamine. The defendant personally obtained large quantities of pseudoephedrine and other materials needed for the manufacturing process. He distributed quantities of the finished product on numerous occasions. In addition, the defendant's criminal history is also an important consideration.

Protection of the public and necessary general deterrence are also significant factors which weigh against a reduction here, given the seriousness of the criminal conduct, including the actual manufacturing of methamphetamine, which is a dangerous process, and the large amount of methamphetamine involved in the offense. One final factor also weighs against the full reduction sought by defendant. That is the one pointed out by the government response in this matter. The defendant faced a congressionally imposed ten-year mandatory minimum term of imprisonment as a result of his conviction. The only reason he escaped that ten-year minimum term, then or now, was the government's motion for downward departure based on substantial assistance. At the time of sentencing, the clear rule in the Sixth Circuit was that "only factors relating to a defendant's cooperation may influence the extent of a departure pursuant to § 3553(e)." *United States v. Grant*, 636 F.3d 803, 814 (6th Cir. 2011) (*en banc*). This Court reviewed the government's motion outlining the assistance provided by the defendant and concluded at the time that the sentence imposed reflected the extent of his cooperation. The policy bases upon which the Sixth Circuit premised its holding remain the same, even though the defendant is now *eligible* for the reduction based on the amendment to the guidelines. Since the only way defendant escaped the congressionally imposed mandatory minimum was for substantial assistance to the government, it is perfectly logical that the extent of the reduction should be determined based on the extent of assistance.

As the government points out, a reduction to the level sought by the defendant would result in a 49 percent reduction from the mandatory minimum. Such a reduction is not warranted here under the circumstances outlined above and the fact that he was expelled from the residential drug treatment program while in BOP custody. The Court will, however, in the exercise of its discretion, in light of the defendant's completion of other classes and receiving only one disciplinary infraction during his incarceration, grant some additional reduction in the case. Therefore, the defendant's motion is GRANTED, and his sentence will be reduced to a term of 71 months of imprisonment

This order is effective November 2, 2015.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE